IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY and APPLIED TECHNICAL SERVICES, INC., | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Case Number: 3:11-CV-1169<br>Judge Nixon |
| UNITED STATES LIABILITY INSURANCE COMPANY d/b/a UNITED STATES LIABILITY GROUP, | ) ) ) ) | |
| Defendant. | ) | |

**INITIAL CASE MANAGEMENT ORDER**

Pursuant to Local Rule 16.01(d)(2), the following Initial Case Management Plan is adopted.

1. **Jurisdiction:**

The parties agree that jurisdiction is appropriate in the Middle District of Tennessee. This is a diversity case filed pursuant to 28 U.S.C. § 1332(a) because the lawsuit involves citizens of different states and the amount in controversy exceeds $75,000.

2. **Plaintiff's theory of the case:**

This lawsuit arises from a wrongful denial of coverage by USLIG for its insured, Applied Technical Services (ATS). Plaintiff The Cincinnati Insurance Company (Cincinnati) hired ATS to act as an expert in two pieces of litigation. Cincinnati lost both of those cases because ATS misplaced or destroyed crucial pieces of evidence. No one knows exactly what happened to either item. In any event, Cincinnati suffered a loss of $188,202.17 as a result of the two occurrences.

ATS sought coverage from its carrier, USLIG. USLIG wrongfully denied coverage, so ATS was forced to settle with Cincinnati. ATS paid $50,000 directly to Cincinnati, conceded liability and the amount of loss, and assigned any rights that it had against USLIG to Cincinnati.

Under existing case law, an insurance company that wrongfully denies coverage for a defendant is bound by the results when the insured is forced to proceed on its own. Cincinnati and ATS believe the damages and liabilities of ATS have been conclusively established by the settlement agreement between the parties, as a result of which USLIG owes Cincinnati $138,202.17, and ATS, $50,000.

3.  **Defendant's theory of the case:**

This lawsuit arises out of two cases in which ATS representatives, John Lentini and Jeff Morrill, served as expert witnesses for Cincinnati Insurance Company: *Morris Tee, Inc. vs. Outreach Thrift Store* (Circuit Court for Rutherford County, Tennessee), and *Cincinnati & Jackson Enterprises vs. Mid South Drillers* (Circuit Court for Wilson County, Tennessee).

In *Morris Tee, Inc. vs. Outreach Thrift Store* (Circuit Court for Rutherford County), Cincinnati was defending Outreach Thrift Store for fire damage originated at a power strip in the Outreach offices. The plaintiffs (other tenants of the building) contended that the cause of the fire was negligent overloading of the power strip by Outreach. John Lentini of ATS was hired by Cincinnati to examine the power strip on behalf of Outreach. He concluded that a latent defect in the strip, not negligent overloading, caused the fire. Based on this opinion, Outreach filed a motion for summary judgment. But, before the motion was heard, it came to light sometime in 2008 that ATS could not find the power strip.

On 8/14/2008, the plaintiffs filed a motion to exclude the opinions of Lentini, which the court granted on 11/24/2008. But the court still allowed Lentini to testify about what he saw, as a fact witnesses. Cincinnati hired a second C & O expert to testify based on photos of the evidence and the testimony of Lentini. He testified that a reasonable expert could reach a conclusion based only on this evidence and came to the same conclusion as Lentini based on that evidence. The other side hired an expert who said a reasonable expert could not reach a conclusion without seeing the evidence and pointed out conclusions by Lentini that were wrong based on the photos.

Outreach/Cincinnati's motion for summary judgment was denied on 1/19/2011. The case was set for trial without a jury on 11/1/11. On 5/6/2011 an order of dismissal indicating that the case had been compromised was entered.

The other case is a subrogation case by Cincinnati – *Cincinnati & Jackson Enterprises vs. Mid South Drillers* (Circuit Court for Wilson County). This case was appealed and there is a written opinion on it – *Cincinnati Insurance Company v. Mid-South Drillers Supply, Inc.* 2008 WL 220287 (Tenn Ct. App.). This case arose out of a fire loss of a drilling rig/truck. ATS expert Jeff Morrill examined the vehicle and determined that the fire was caused by a defective oil hose. He opined that the crimped end of the hose came loose allowing oil to spew all over the hot engine and exhaust resulting in a fire. ATS put the evidence into storage. On 10/3/2006 it was discovered that the evidence could not be located and by 10/6/2006, ATS concluded that it had been destroyed.

The defendants filed a motion for summary judgment arguing spoliation of evidence. On 10/26/2006 the court denied the motion for summary judgment, but *sua sponte* dismissed the lawsuit as a sanction against Cincinnati for spoliation of evidence. Cincinnati appealed, but the court of appeals affirmed finding the trial court acted within its discretion.

3

The initial United States Liability Insurance Company (USLI) policy had a policy period of 6/1/2000 to 6/1/2001 and renewed each year until its termination on 6/1/2007. The USLI policy provides under the heading "Conditions" that in the event of circumstances or incidents which could reasonably give rise to a "suit" written notice containing particulars sufficient to identify you and all reasonably obtainable information with respect to time, place and circumstance involved, and the names and addresses of any injured person or persons who might make a claim and of witnesses shall be given by or for you to us as soon as practicable.

ATS first gave notice to USLI of the occurrences which are the subject to this lawsuit on May 11, 2011. In the Morris Tee case, the loss of the evidence was discovered in mid-2008 and the adverse court ruling occurred on 11/24/2008. In the Mid South Drillers Supply case, the destruction of the evidence was discovered by 10/6/2006 and the adverse court ruling occurred on 10/26/2006. Thus, notice of the occurrence in the Morris Tee case was delayed for about 2.5 years and notice of the occurrence in Mid South Drillers Supply case was delayed by about 4.5 years.

Georgia law applies to the interpretation of the policy because it was issued to ATS in Georgia. A policy provision requiring notice of an occurrence expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification. The insured has the burden of showing justification. Generally, whether a condition precedent, such as notice, has been met is a question of fact for the jury or fact finder. However, an unexcused significant delay may be unreasonable as a matter of law.

In the insuring agreement, the policy provides that this insurance applies only if the "economic loss" is caused by a "wrongful act" and both the "economic loss" and the "wrongful act" must both first occur during the policy period. The wrongful acts (losing the evidence)

occurred during the term of the USLI policy; however, the settlement of the E & O claims arising out of the loss of that evidence or "economic loss" did not occur until after the termination of the policy. The USLI policy terminated 6/1/2007. The "economic loss" or the settlement of the E & O claim between Cincinnati and ATS, occurred on September 22, 2011. Thus, although both negligent events occurred during the term of the policy, the economic loss did not.

United States Liability Insurance Company contends that the claim of Applied Technical Services is barred because it failed to comply with the condition of the policy that required it to give written notice to USLI as soon as practicable of any circumstances or incidents which could reasonably give rise to a "suit" and because the "wrongful acts" and the "economic loss" allegedly resulting from those "wrongful acts" did not occur during the term of the policy.

**4.     Identification of the issues:**

A.     Is USLIG allowed to introduce evidence as to the facts of the underlying cases?

B.     Is USLIG conclusively bound to the terms of the settlement agreement executed between Cincinnati and ATS?

C.     Did USLIG properly deny coverage?

D.     Does USLIG owe a combined $188,202.17 to the Plaintiffs?

E.     Can Cincinnati/ATS show by a preponderance of the evidence that "but for" ATS's negligence, Cincinnati would have prevailed in the underlying cases.

F.     Did ATS fail to comply with a condition precedent of the policy by failing to give written notice of circumstances or incidents which could reasonably give rise to a "suit" as soon as practicable?

G. Can Cincinnati/ATS show, by a preponderance of the evidence, valid justification for the failing to give written notice to USLI of circumstances or incidents which could reasonably give rise to a "suit" as soon as practicable?

H. Can Cincinnati/ATS show that any "economic loss" claimed in this lawsuit was caused by a "wrongful act" and both the "economic loss" and the "wrongful act" both first occurred during the policy period?

5. **The need for other claims or special issues under Rules 13-15, 17-21, and Rule 23 of the Federal Rules of Civil Procedure:**

None of which the parties are aware.

6. **Witnesses, if known, subject to supplementation by each party:**

   A. Timothy Graves, Applied Technical Services

   B. Tony Hampton, The Cincinnati Insurance Company

   C. Daniel Walsh, The Cincinnati Insurance Company

   D. Representatives of USLIG with knowledge of the reasons for denial.

   E. Ken Burian, The Cincinnati Insurance Company

   F. John Lentini, ATS

   G. Jeff Morrill, ATS

7. **Initial Disclosures and Staging of Discovery**

The parties conducted the Rule 26 meeting on Wednesday, February 15, 2012. The parties have agreed that they will make their initial disclosures within thirty days thereafter. ~~The parties believe the~~ ^shall^ discovery ~~can~~ be completed by **November 15, 2012**. No motions concerning discovery are to be filed until after the parties have conferred in good faith and unable to resolve their differences, have scheduled and participated in a conference call with Judge Griffin.

8. **Dispositive motions:**

Motions for summary judgment shall be due by **November 30, 2012**, responses due by **December 21, 2012**, and replies due by **January 4, 2012**. The parties believe the case will be ready to try during the **first quarter of 2013**. If dispositive motions are filed earlier than the dates set above, the response and reply dates are moved up accordingly. The motion and response memoranda are limited to **twenty-five (25) pages** and the reply, if any, is limited to **five (5) pages**.

9. **Other deadlines:**

The parties are not aware of any additional deadlines which need to be set.

10. **Subsequent case management conferences:**

Any subsequent case management conference may be set by the Court as it deems appropriate. Neither counsel practice in Davidson County, so the conference will be conducted by telephone unless an in-person conference is requested by either of the parties or the Court. The conference will be conducted by telephone, and initiated by Plaintiff.

11. **Alternate dispute resolution:**

The parties are willing to engage in alternate dispute resolution.

12. **Consent to trial before the Magistrate Judge:**

The parties are willing to consent to trial before the Magistrate Judge.

13. **Target trial date:**

The parties believe this case could be ready for trial by the first quarter of 2013.

It is so **ORDERED** this ____ day of _____, 2012:

[signature] Judge Juliet Griffin

APPROVED FOR ENTRY:

s/John M. Neal
John M. Neal, #5920
The Neal Law Firm
6657 Ridge Rock Lane
Post Office Box 51930
Knoxville, Tennessee 37950
865-414-6784 Direct Line
Attorney for Plaintiffs

s/N. Mark Kinsman
N. Mark Kinsman, #6039
Baker, Kinsman, Hollis & Clelland, P.C.
701 Market Street, Suite 1500
Chattanooga, Tennessee 37402
423-756-3333
Attorney for Defendant