IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY; and APPLIED TECHNICAL SERVICES, INC. | ) ) ) |
| v. | ) NO. 3:11-1169 |
| UNITED STATES LIABILITY INSURANCE COMPANY d/b/a United States Liability Group | ) ) ) ) ) |

# **M E M O R A N D U M**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, the parties in this action have consented to have the Magistrate Judge conduct any and all proceedings, including the entry of a final judgment. See Docket Entry No. 24.

## I. BACKGROUND

The Cincinnati Insurance Company ("Cincinnati Insurance"), an Ohio corporation, and Applied Technical Services, Inc. ("ATS"), a Georgia corporation, filed this action on December 12, 2011, asserting diversity jurisdiction under 28 U.S.C. § 1332. Named as the defendant is the United States Liability Insurance Company ("USLI"), a Pennsylvania corporation.

ATS is an engineering firm that provides expert analysis and investigation in the area of the causes and origins of fires, explosions, and other similar events. From June 1, 2000, to June 1, 2007, USLI provided liability insurance coverage to ATS through an Investigators Liability Insurance Policy ("the Liability Insurance Policy"). See Exhibit A to Complaint (Docket Entry No. 1-1). On two occasions relevant to the instant action, Cincinnati Insurance hired ATS to provide experts in

state court lawsuits in Tennessee in which Cincinnati Insurance was involved. In both lawsuits, ATS failed to preserve critical physical evidence that was relevant to the issue of the causes of an explosion and a fire at issue in the lawsuits. The failure to preserve this evidence deprived the opposing parties in the lawsuits of the opportunity to perform their own analysis of the evidence and effectively lost the cases for Cincinnati Insurance.

The first lawsuit, <u>The Cincinnati Insurance Company v. Mid-South Drillers Supply, Inc. and Eaton Aeroquip, Inc.</u> ("the Mid-South Drillers lawsuit"), was filed in 2004 as a subrogation case in which Cincinnati sought to recover $105,748.36 it had paid to its insured, a drilling company, for repairs to a well drilling rig that had been damaged in a 2002 explosion. The ATS expert, Jeff Morrill, examined the well drilling rig and issued a report concluding that the explosion was caused by the failure of a high pressure hose that had been supplied and/or manufactured by the defendants in the case. During the course of the litigation, the defendants' experts were unable to examine the high pressure hose because the hose had been destroyed while in the custody of ATS. Cincinnati Insurance's complaint was thereafter dismissed on October 26, 2006, as a sanction after the trial court found that Cincinnati Insurance was guilty of spoliation of the evidence and had severely prejudiced the defendants' ability to defend the action. The dismissal of the case was upheld on appeal. See <u>Cincinnati Ins. Co. v. Mid-South Drillers Supply, Inc.</u>, 2008 WL 220287 (Ga.Ct. App. Jan. 25, 2008).

In the second lawsuit, <u>Morris Tee, Inc. d/b/a Olympus Health Club and Spa v. The Outreach Thrift Store, Inc.</u>, ("the Morris Tee lawsuit"), Cincinnati Insurance unsuccessfully defended its insured, the Outreach Thrift Store, from damage claims that arose after an electrical fire occurred on February 13, 2005, at a property the Outreach Thrift Store leased from Morris Tee. The ATS

expert, John Lentini, examined evidence that he concluded had caused the fire, but he failed to preserve this evidence, which prevented Morris Tee from conducting its own testing and inspection of the evidence. The trial judge ultimately excluded the expert testimony of Mr. Lentini on November 24, 2008, because of the spoilation of the evidence. Cincinnati Insurance was then unable to defend the claims against its insured and paid $82,453.81 to Morris Tee on its claims.

On April 27, 2011, Cincinnati Insurance notified ATS that it would make a claim against ATS for recovery of the losses it had incurred because of the actions of the ATS experts in the two lawsuits, and on May 11, 2011, ATS notified USLI of the claims of Cincinnati Insurance.[1] The May 11, 2011, letter from ATS was the first time it had notified USLI of the actions of the ATS employees in the Mid-South Drillers and Morris Tee lawsuits.

By letter dated May 18, 2011, USLI notified ATS that it denied coverage under the Liability Insurance Policy and would not defend or indemnify ATS in claims brought against it by Cincinnati Insurance for either of the two matters. The only basis specifically set out in the May 18, 2011, letter denying coverage was that ATS had not complied with the Liability Insurance Policy's provision that provided:

> in the event of circumstances or incidents which could reasonably give rise to a "suit", written notice containing particulars sufficient to identify you and all reasonably obtainable information... Shall be given by or for you to us as soon as practicable.

See Docket Entry No. 34-3. The letter also included the statement:

> This determination is based upon all information available to us at this time. If you have any information or documentation that might bear upon our determination, please forward same to the undersigned as soon as possible for our further review.

---

[1] Copies of the April 27, 2011, and May 11, 2011, letters have not been made a part of the record.

> The contents of this letter should not be construed as a waiver of any other rights or defenses that this Company has or may have in the future under the Policy with respect to this matter.

Id.

Subsequent to the denial of coverage by USLI, Cincinnati Insurance and ATS entered into a settlement agreement on September 22, 2011, whereby Cincinnati Insurance released its claims against ATS in exchange for $50,000 and an assignment of any rights ATS has against USLI under the Liability Insurance Policy. See Exhibit B to Complaint (Docket Entry No. 1-2) .

The instant action was then filed by Cincinnati Insurance and ATS seeking a total of $188,202.17 from USLI on the claim that USLI wrongfully denied coverage to ATS under the Liability Insurance Policy.

## II. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

USLI contends that there are no material facts in dispute and that it is entitled to judgment as a matter of law. USLI argues that it properly denied coverage under the Liability Insurance Policy because: 1) the notice provided by ATS to USLI on May 11, 2011, occurred several years after the actions of the ATS employees in the Mid-South Drillers and Morris Tee lawsuits and does not constitute notice "as soon as practicable" as required by Section V(A)(1) of the policy; and 2) the alleged economic loss suffered by ATS and the wrongful acts that caused the loss did not occur during the effective policy term as required by Section I(2)(a). In support of its motion, USLI relies on the affidavit of E. Metts Hardy (Docket Entry No. 26-1). USLI supplements its motion with the Plaintiffs' responses to USLI's requests for admissions, see Docket Entry No. 32, a supplemental

4

Statement of Undisputed Facts, see Docket Entry No. 38, and copies of e-mails produced by ATS in response to USLI's revised first request for production of documents. See Docket Entry No. 39-1.

In response, the Plaintiffs contend that the first notice that ATS had that a claim might be filed against it was the demand letter it received from Cincinnati Insurance on April 27, 2011. The Plaintiffs argue that, prior to that time, ATS had no reason to believe that Cincinnati Insurance would pursue a claim against it because of the actions of Jeff Morrill or John Lentini and that Cincinnati Insurance continued to use ATS as fire experts up to the time the demand letter was sent. ATS asserts that it was "operating completely in the dark" and that ATS's management was unaware of any problems with either the Mid-South Drillers or the Morris Tee lawsuits until the April 27, 2011, demand letter. See Plaintiffs' Response (Docket Entry No. 34), at 4-5. In light of these facts, the Plaintiffs contend that there is a question of fact as to the reasonableness of ATS's notification to USLI in April 2011.

With respect to USLI's argument that it denied coverage based on the "economic loss/wrongful act" provision, the Plaintiffs contend that the decision in Hoover v. Maxum Indem. Co., 730 S.E.2d 413 (Ga. 2012), precludes USLI from raising this argument it was not included in the coverage denial letter USLI issued to ATS on May 18, 2011. The Plaintiffs argue that Hoover requires that USLI must have included all coverage defenses it intended to use in the denial letter and that the reservation of rights language included in the letter is not sufficient to preserve the defense for USLI. The Plaintiffs further argue that this coverage defense lacks merit because the claims at issue under the policy are not "economic loss" claims but are "property damage" claims based on the loss or destruction of the evidence by ATS employees in the two state lawsuits. The

5

Plaintiffs assert that it is undisputed that the loss or destruction of the evidence occurred during the effective term of the Liability Insurance Policy and thus constitutes a covered loss.

### III.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving

party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. ANALYSIS

The parties agree that the choice of law for this dispute is the substantive law of Georgia.[2] The case law in Georgia is clear with regard to the effect of prompt notice provisions in insurance policies. Compliance with a prompt notice provision contained in an insurance policy acts as a condition precedent to coverage under the policy. Richmond v. Georgia Farm Bureau Mut. Ins., 231 S.E.2d 245, 250 (Ga.Ct.App. 1976). "The purpose of a notice provision in an insurance policy is to

---

[2] The Liability Policy was issued in Georgia to ATS, a Georgia corporation.

enable an insurer to investigate promptly the facts surrounding the occurrence while they are still fresh and the witnesses are still available, to prepare for a defense of the action, and, in a proper case, to determine the feasibility of settlement of the claim." Id. 231 S.E.2d at 250. If an insured has not demonstrated a sufficient justification for its failure to give notice in accordance with a notice provision or if the insurer has not waived compliance with a notice provision, the insurer is not obligated to provide coverage or a defense. Id.; Plantation Pipeline Co. v. Royal Indem. Co., 537 S.E.2d 165 (Ga.Ct.App. 2000).

The Plaintiffs do not argue that Section V(A)(1) of the Liability Insurance Policy is not a condition precedent to coverage or that the condition was waived by USLI. Further, it is undisputed that the circumstances or incidents which gave rise to the claims made on the policy, i.e. the two instances when ATS employees lost or destroyed critical trial evidence, occurred no later than 2006 and 2008, respectively.[3] Accordingly, the only issue to be resolved is whether ATS's May 2011, written notification to USLI was proper notice because the several year delay in providing notice was justified.

When an insured has offered a justification for a delay in providing notice to the insurer, the standard for evaluating that justification is objective reasonableness. This requires assessment of whether or not an event would be viewed by a reasonable and ordinarily prudent person as the basis of a possible claim. See Forshee v. Employers Mut. Cas. Co., 711 S.E.2d 28, 31–32 (Ga.Ct.App.

---

[3] The parties agree that 2006 is the date when the high pressure hose in Mid-South Drillers was deemed to have been destroyed. See Plaintiffs' Response to USLI's Statement of Undisputed Facts (Docket Entry No. 35), at ¶ 6. Although the physical evidence in Morris Tee may have been lost or destroyed in 2005 or 2006, see Plaintiff's Response in Opposition (Docket Entry No. 34), at 5, the parties agree that, no later than sometime in 2008, the evidence was deemed to have been misplaced or destroyed. See Docket Entry No. 35, at ¶ 17.

2011). Generally, this reasonableness determination is a question for the fact finder. Plantation Pipeline, 537 S.E.2d at 167; Southern Trust Ins. Co. v. Clark, 251 S.E.2d 823, 827 (Ga.Ct.App. 1978). However, it is well-settled under Georgia law that a court may evaluate the facts and circumstances of a particular case and find that an insured's delay in giving the required notice was unjustified and unreasonable as a matter of law. See Protective Ins. Co. v. Johnson, 256 Ga. 713, 352 S.E.2d 760 (1987); Kay–Lex Co. v. Essex Inc. Co., 649 S.E.2d 602 (Ga.Ct.App. 2007); Townsend v. National Union Fire Ins. Co., 397 S.E.2d 61 (Ga.Ct.App. 1990); Caldwell v. State Farm Fire & Cas. Ins. Co., 385 S.E.2d 97, 99 (Ga.Ct.App. 1989); EVI Equip., Inc. v. Northern Ins. Co., 374 S.E.2d 788 (Ga.Ct.App. 1988); Southern Guar. Ins. Co. v. Miller, 358 S.E.2d 611, 612 (Ga.Ct.App. 1987); Richmond, supra. See also Hathaway Dev. Co. v. Illinois Union Ins. Co., 274 Fed.Appx. 787 (11th Cir. Apr. 18, 2008) (per curiam); Canadyne–Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547, 1556 (11th Cir.1993); American Ins. Co. v. Evercare Co., 699 F.Supp.2d 1361, 1368 (N.D. Ga. 2010); Travelers Indem. Co. of Conn. v. Douglasville Dev., LLC, 2008 WL 4372004 (N.D. Ga. Sept. 19, 2008); Cotton States Mut. Ins. Co. v. International Surplus Lines Ins. Co., 652 F.Supp. 851, 856 (N.D. Ga. 1986).

The Court finds that, under the facts and circumstances of the instant action, ATS's delay in providing notice was unreasonable and, thus, unjustified as a matter of law. The terms of the Liability Insurance Policy require not only that notice be given if ATS had a claim or civil proceeding brought against it for damages, see Section V(A)(2), but also that notice be given "as soon as practicable" "in the event of circumstances or incidents which could reasonably give rise to a 'suit.'" See Section V(A)(1). Thus, the policy clearly required that notice be given by ATS not only of actual claims against it that came to fruition through a demand letter or lawsuit, but also of

events that could reasonably give rise to a potential claim. The Plaintiffs' argument that ATS need not have given notice to USLI until ATS was actually notified by Cincinnati Insurance that it intended to pursue a claim against ATS essentially conflates the two distinct notice provisions and requires the Court to disregard the language of Section V(A)(1).

The duty to provide notice to the insurer is triggered when the insured actually knew or should have known of the possibility that it might be held liable for the occurrence in question. South Carolina Ins. Co. v. Coody, 957 F.Supp. 234, 237 (M.D. Ga. 1997); Canadyne–Georgia Corp. v. Continental Ins. Co., 1992 WL 547722, *5 (N.D. Ga. 1992), aff'd, Canadyne–Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547, 1556–57 (11th Cir. 1993). Given the somewhat unique facts and circumstances involved in the instant action, no reasonable and ordinarily prudent person would have concluded that the two instances of lost or destroyed evidence were not a basis for a possible claim against ATS and that there was no duty to notify USLI of the incidents.

Pursuant to a contract or agreement with Cincinnati Insurance, ATS provided two expert witnesses for use by Cincinnati Insurance. The employees failed to take the necessary steps to preserve critical evidence and these failures led directly to the litigation losses by Cincinnati Insurance. Although an insured is not required to foresee every possible claim that might arise from an incident, see Forshee, 711 S.E.2d at 31, the two incidents in question could not have been viewed by any reasonable person as trivial or inconsequential. Given the nature of the incidents in question, the incidents clearly raised the possibility of professional malpractice by the ATS employees and would have alerted any reasonable person to the possibility of a potential claim against ATS. Indeed, the Court notes that the supplemental summary judgment filings made by USLI of e-mail evidence provided by ATS in discovery indicate that both Mr. Lentini and Mr. Morrill were actually aware

in 2008 that the loss of evidence in Morris Tee could subject ATS to a potential claim. See Docket Entry Nos. 38-39. The Plaintiffs have not responded in any manner to the supplemental filings. In making the determination that it was unreasonable for ATS to not view the two incidents as giving rise to a possible claim against it, the Court finds no need to rely on expert testimony. Basic common sense readily supports the conclusion that ATS did not act reasonably in waiting to notify USLI of the two incidents in question. Protection from liability for the type of incidents in question is a reason why ATS would have had insurance coverage via an Investigators Liability Insurance Policy. Ignoring the incidents was simply not reasonable.

The Plaintiffs argue that ATS acted reasonably because Cincinnati Insurance continued to use it as a fire expert after the incidents in question and point out that one factor a court may properly consider in evaluating the reasonableness of an insured's failure to give prompt notice is "whether anyone gave an indication that he intended to hold the insured responsible for the event and resulting injuries." Forshee, 711 S.E.2d at 31. The Court finds this factor to be much more pertinent to cases in which an objectively trivial or inconsequential event is at issue. In such a situation, the absence of someone stepping forward to indicate to the insured that they intended to hold the insured responsible for the event simply re-emphasizes the trivial or unremarkable nature of the event at issue and the resulting reasonableness of the insured in believing that the event could not give rise to a potential claim. As determined by the Court infra, the two incidents at issue in this action were anything but trivial or inconsequential and warranted notice by ATS regardless of whether Cincinnati Insurance subsequently used ATS as a fire expert. Accordingly, the Court does not view Cincinnati Insurance's continued use of ATS as a fire expert to be a persuasive factor in favor of the Plaintiffs' argument that ATS acted reasonably by not promptly notifying USLI of the incidents in question.

11

The Plaintiffs also argue that ATS should be excused from its delayed notice because ATS's management was unaware of the actions of Mr. Lentini and Mr. Morrill until after the demand letter was sent by Cincinnati Insurance in April 2011, and ATS looked into the files concerning the Mid-South Driller or Morris Tee lawsuits. Such an argument is likewise unpersuasive. ATS is responsible for its own employees, and the adequacy of its quality control and employee monitoring policies is a matter of its own doing. If ATS management was "in the dark" regarding the events in the Mid-South Driller or Morris Tee lawsuits as those events were unfolding or even afterwards, the consequences of being in such a state are consequences that must be borne by ATS and in no way justify its late notice to USLI.

Based on the foregoing, the Court finds that, as a matter of law, ATS did not give notice to USLI of the two incidents involving its employees as soon as practicable, that ATS was not justified in providing delayed notice to USLI, that the May 2011, notice letter was not sufficient to satisfy its notice obligation under the Liability Insurance Policy, and that USLI was justified in denying coverage under the Liability Insurance Policy. Summary judgment is warranted in favor of USLI on this ground alone. Given the Court's determination that coverage under the policy was properly denied based upon ATS's failure to comply with the notice provision, the Court declines to address the Plaintiffs' alternative argument for summary judgment that the economic loss did not occur during the policy period.

## V. CONCLUSION

After the Court's review of the parties' arguments and the record in this action, the motion for summary judgment filed by Defendant United States Liability Insurance Company will be GRANTED and this action will be DISMISSED.

An appropriate Order will enter.

JULIET GRIFFIN
United States Magistrate Judge